OFFICE OF THE GENERAL COUNSEL
CLARK COUNTY SCHOOL DISTRICT
S. SCOTT GREENBERG
Nevada Bar No. 4622
5100 W. Sahara Ave.
Las Vegas, NV 89146
(702) 799-5373
Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DIANE CRUMP-RICHMOND, | CASE NO. 2:05-cv-1309-RLH(GWF) |
| Plaintiff, | |
| v. | |
| FRANK ARAMBULA; and CLARK COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada, | |
| Defendants. | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW, Defendants Clark County School District ("District") and Frank Arambula, by and through their counsel, and hereby file their Motion for Summary Judgment.  This Motion is based upon the following Memorandum of Points and Authorities, the supporting exhibits attached hereto and the other papers and pleadings on file with the Court in this matter along with any argument allowed by the Court.

DATED this 30th day of October, 2006.

                              CLARK COUNTY SCHOOL DISTRICT
                              Office of the General Counsel

                    By:      _____/s/_____
                              S. SCOTT GREENBERG
                              Nevada Bar No. 4622
                              5100 W. Sahara Ave.
                              Las Vegas, Nevada 89146
                              Attorney for Defendants

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.   INTRODUCTION**

This matter arises out of Plaintiff's arrest by Officer Frank Arambula at Desert Pines High School (hereinafter "Desert Pines") on January 13, 2005.  Plaintiff's complaint alleges Section 1983 claims of excessive force and false arrest against Officer Arambula, as well as <u>Monell</u> claims against the District, and a state law tort claim for assault and battery.  Exhibit 1. Discovery is closed and this matter is ripe for summary judgment for the reasons discussed below.

**II.  STATEMENT OF FACTS**

Officer Arambula is a Clark County School District police officer.  Exhibit 1 at paragraph 5.  There had been fights and other types of problems at Dessert Pines requiring law enforcement; therefore, extra school police officers regularly patrolled the school at student dismissal time.  Exhibit 2 at p. 15, ll. 6-17; Exhibit 3 at p. 71, ll. 11-24.  Officer Arambula and his partner were patrolling the school near dismissal time on January 13th and they stopped a car in the parking lot.  Exhibit 2 at p. 21, ll. 4-18.  Although unknown to the officers, the driver of the car was a former student named Otis.

Plaintiff was a teacher at Desert Pines.  Exhibit 1 at paragraph 7.  On January 13, 2005, Plaintiff was preparing to go from Desert Pines to UNLV for a dance recital.  Exhibit 4 at p. 17, l. 1-15.  Plaintiff was packing her car in the parking lot with costumes and other things for the recital.  Exhibit 4 at p. p. 24, ll. 8-22; p. 64, ll. 6-23.  One of Plaintiff's students saw the police stop the car driven by Otis.  The student went to Plaintiff,

1  who was walking to her car, and told Plaintiff "I think I got Otis
2  in trouble, and the police stopped him."  Exhibit 4 at p. 65, ll.
3  18-22.

4      Plaintiff then went to where the police had stopped Otis' car.
5  Plaintiff walked to the front of Otis' car.  Exhibit 4 at p. 69,
6  ll. 1-8.  Plaintiff failed to move away from the stopped car when
7  Officer Arambula told her to do so.  Plaintiff was arrested for
8  obstructing a police officer and handcuffed.  The school principal
9  arrived on the scene and after a short discussion, Officer Arambula
10 let Plaintiff go with a warning.  Exhibit 3 at p. 28, l. 17 - p.
11 29, l. 5; Exhibit 4 at p. 105, ll. 1-11.  Plaintiff was handcuffed
12 for approximately 5 minutes.  Exhibit 4 at p. 60, ll. 22-23.

13 **III.  <u>STATEMENT OF MATERIAL FACTS NOT IN DISPUTE</u>**

14     The following is a statement of the material facts not in
15 dispute solely for the purposes of supporting this motion:

16     1.   Plaintiff was a teacher at Desert Pines.  Exhibit 1
            at paragraph 7.  On January 13, 2005, she was
17          taking the dance team to a recital at UNLV.
            Exhibit 4 at p. 17, l. 1-15.
18
19     2.   Officer Arambula and his partner were patrolling
            Desert Pines on January 13th, when they stopped a
            vehicle in Desert Pines' parking lot.  Exhibit 2 at
20          p. 17, ll. 11-21; p. 21, ll. 4-18.

21     3.   The car stopped by Officer Arambula and his partner
            was being driven by a former student named Otis.
22          Exhibit 4 at p. 69, ll. 1-8.

23     4.   Plaintiff was packing her car with costumes and
            other things for the recital.  Exhibit 4 at p. 24,
24          ll. 8-22; p. 64, ll. 6-23.  One of Plaintiff's
            students told Plaintiff she thought she had gotten
25          Otis in trouble and the police had stopped him.
            Exhibit 4 at p. 65, ll. 18-22.
26

27 / / /

28 / / /

5.   Plaintiff went to the front of Otis' car which had been stopped by the police.  Exhibit 4 at p. 69, ll. 1-8.  As Plaintiff was walking towards the car, she saw the officers.  Exhibit 4 at p. 80, l. 23 - p. 81, l. 5.

6.   Officer Arambula asked Plaintiff to move away from the stopped car twice.  Plaintiff failed to move away.  Exhibit 2 at p. 26, l. 12 - p. 27, l. 25.

7.   Plaintiff admits that when Officer Arambula touched her she tried to pull away from him.  Exhibit 4 at p. 87, ll. 8-13.

8.   Officer Arambula informed Plaintiff she was being arrested for obstructing a police officer.  Officer Arambula handcuffed Plaintiff.  Exhibit 4 at p. 85, ll. 5-9.

9.   Plaintiff was handcuffed for about 5 minutes. Officer Arambula took the handcuffs off Plaintiff and let her go with a warning.  Exhibit 4 at p. 105, ll. 1-11; p. 60, ll. 22-23.

## IV.   LEGAL ANALYSIS

### A.   STANDARD FOR A MOTION FOR SUMMARY JUDGMENT

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©.  The burden of demonstrating the absence of a genuine issue of material fact lies with the moving party, Zoslaw v. MCA Distr. Corp., 693 F.2d 870, 883 (9th Cir. 1982), and for this purpose, the material lodged by the moving party must be viewed in the light most favorable to the nonmoving party.  Baker v. Centennial Ins. Co., 970 F.2d 660, 662 (9th Cir. 1992).  A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth.  S.E.C. v. Seaboard Corp., 677 F.2d 130, 1306 (9th Cir. 1982).

- 4 -

Once the moving party presents evidence that would call for judgment as a matter of law at trial if left uncontroverted, the respondent must show by specific facts the existence of a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> There is no genuine issue of fact for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Id. at 249-50 (citations omitted).  The nonmoving party may not simply rely on his allegations to defeat summary judgment. Vandermeer v. Douglas County, 15 F.Supp.2d 970, 974 (D. Nev. 1998).

It must be remembered that summary judgment is a necessary and useful procedure which supports the interests served by the rules of civil procedure.  The Supreme Court has explained that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 322, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**B.   PLAINTIFF'S SECTION 1983 CLAIMS**

1.   Plaintiff's False Arrest Claim

Plaintiff's second claim for relief asserts her "inappropriate[] handcuffing" violated her "liberty interest" under the Fourteenth Amendment.  Exhibit 1 at paragraphs 20-22. Plaintiff was handcuffed when she was being arrested by Officer Arambula.  Statement of Material Facts not in Dispute, No. 8.  This

was a "seizure" under the Fourth Amendment. Graham v. Connor, 490
U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (claims
arising from an "arrest, investigatory stop or other 'seizure' of
a free citizen should be analyzed under the Fourth Amendment").
There is no Fourteenth Amendment right in the context of a police
seizure. Brew v. City of Emeryville, 138 F.Supp.2d 1217, 1223
(N.D. Calif. 2001). Therefore, Plaintiff's claim of a Fourteenth
Amendment violation fails as a matter of law.

A claim of an unlawful seizure by police is analyzed under the
Fourth Amendment. Id. There should be no dispute that a police
officer with probable cause to arrest an individual may legally do
so. This is what occurred in this case. Officer Arambula had
probable cause to arrest Plaintiff for obstructing a police officer
pursuant to NRS 197.190 which prohibits "willfully hinder[ing],
delay[ing], or obstruct[ing] any public officer in the discharge of
his official powers or duties . . . ."

Officer Arambula and his partner initiated the traffic stop
when the car entered the school parking lot and stopped in a fire
lane parked against traffic. Exhibit 2 at p. 21, ll. 4-11. The
car was also missing a front license plate. Id. Officer Arambula
testified that it was not uncommon for that particular model car to
come back as stolen when checked. Exhibit 2 at p. 27, l. 20 - p.
28, l. 1. The officers were patrolling the school parking lot
because most of the incidents at the school, such as fights,
occurred there. Exhibit 2 at p. 23, 1-9. The driver was not able
to produce all the documentation being requested and was acting
nervous. Exhibit 2 at p. 24, 5-16. Officer Arambula was covering
his partner who was engaged with the driver. Exhibit 2 at p. 25,

1  ll. 1-13.   This is when Plaintiff approached the stopped car.

2  Exhibit 2 at p. 25, l. 23 - p. 26, l. 9.

3     Courts recognize that traffic stops are inherently dangerous.

4  See Michigan v. Long, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77

5  L.Ed.2d 1201 (1983) ("Roadside encounters between police and

6  suspects are particularly hazardous").   Officer Arambula was

7  engaged in a traffic stop with a driver who was unknown and it was

8  unknown why he was at the school.  The reason Officer Arambula and

9  his partner were at the school at that time was because it had

10  serious incidents requiring additional law enforcement personnel.[1]

11  Now Plaintiff was walking up to the car during the traffic stop.

12  Any traffic stop is a potentially dangerous situation and Officer

13  Arambula appropriately attempted to have Plaintiff step back from

14  the stopped car.  She did not do so.  Exhibit 2 at p. 26, l. 13 -

15  p. 27, l. 14.  Officer Arambula told Plaintiff she was obstructing

16  and attempted to guide her away from the car.  Exhibit 2 at p. 28,

17  ll. 22-25.  Plaintiff made a movement Officer Arambula perceived as

18  attempting to pull her hand away from him.  Exhibit 2 at p. 29, ll.

19  1-3.  Plaintiff admits that she tried to pull away from Officer

20  Arambula.  Statement of Material Facts not in Dispute, No. 7.  At

21  the time, Officer Arambula believed Plaintiff had not complied with

22  his instructions to step back and began to arrest Plaintiff which

23  included handcuffing.  Exhibit 2 at p. 29, l. 24 - p. 30, l. 2.

24     To make out a Section 1983 claim for an unlawful arrest, the

25  plaintiff must "demonstrate that there was no probable cause to

26

27

28     [1] One officer was assigned to Desert Pines.  Officer Arambula and his partner were additional personnel that would patrol the school near dismissal time.  Exhibit 2 at p. 22, ll. 6-17.

1  arrest . . . ."  <u>Cabrera v. City of Huntington Park</u>, 159 F.3d 374,

2  380 (9th Cir. 1998).  Probable cause exists when, under the totality

3  of the circumstances known to the officer, a prudent person would

4  believe the suspect committed a crime.  <u>Dubner v. City and County</u>

5  <u>of San Francisco</u>, 266 F.3d 959, 964 (9th Cir. 2001).  When an

6  individual does not comply with an officer's instructions to move

7  back from a traffic stop, the elements of obstructing a police

8  officer are met.  See <u>In re Muhammed</u>, 95 Cal.App.4th 1325, 116

9  Cal.Rptr.2d 21 (Ct.App.Calif 2002); <u>State of Washington v. Lalonde</u>,

10  665 P.2d 421, 35 Wn. App. 54 (Wash.App. 1983) (individual that

11  approached officer arresting suspect to supposedly "calm things

12  down" guilty of obstructing police officer as he refused to back

13  away as instructed by officer).  Probable cause existed to arrest

14  Plaintiff when she failed to move back as instructed by Officer

15  Arambula; therefore, there can be no false arrest as a matter of

16  law.

17      2.  <u>Plaintiff's Excessive Force Claim</u>

18      Plaintiff's excessive force claim is based upon the assertion

19  that Officer Arambula "twisted [Plaintiff's arm] and awkwardly

20  pinned it behind [Plaintiff's back]" while arresting her and when

21  asked "to loosen his grip, [Officer Arambula] retaliated by

22  tightening his grip."  Exhibit 6 at Response to Interrogatory No.

23  13 at p. 4.  Plaintiff testified at her deposition that Officer

24  Arambula stated he was arresting her and then took her arm "and he

25  twisted it behind my back."  Exhibit 4 at p. 86, ll. 16-17.

26  Plaintiff admits that she was attempting to pull her arm away from

27  Officer Arambula when he was arresting her.  Statement of Material

28  Facts not in Dispute, No. 7.

1    An excessive force claim by an individual stopped or arrested

2  by police is analyzed under the Fourth Amendment's "objective

3  reasonableness" standard.  Graham v. Connor, 490 U.S. 386, 388, 109

4  S.Ct. 1865, 104 L.Ed.2d 443 (1989).  Arresting an individual

5  "necessarily carries with it the right to use some degree of

6  physical coercion or threat thereof to effect it."  Id. at 396.

7  Each case must be judged on its own facts and circumstances which

8  include the severity of the offense, the suspects posed threat and

9  whether the suspect is resisting or attempting to flee.  Id.  The

10 "reasonableness" of a particular use of force must be judged from

11 the perspective of the officer at the scene and not the "20/20

12 vision of hindsight."  Id.  The "reasonableness" determination must

13 take into account that police officers are required to make split

14 second decisions about the use of force that is necessary during

15 "tense, uncertain and rapidly evolving" situations.  Id. at 397.

16 "Not every push or shove, even if it may later seem unnecessary in

17 the peace of a judge's chamber's" violates the Fourth Amendment.

18 Id. (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2nd 1973)).

19     Taking Plaintiff's allegations as true, Officer Arambula at

20 most twisted her arm behind her back to effectuate her arrest and

21 had a tight grip on her arm.  And this is while Plaintiff

22 admittedly was attempting to pull her arm away from Officer

23 Arambula.  The law recognizes that force may be used - it is only

24 excessive force that is unlawful.  Officer Arambula used the force

25 necessary to put Plaintiff's arm behind her back for handcuffing.

26 He did not strike Plaintiff in any way, did not take her down or

27 use anything other than his own hands to move Plaintiff's arms.

28 Reasonable force is lawful and given Plaintiff's admission that she

1   was attempting to pull away from Officer Arambula, the minimal

2   allegations of excessive force must fail as a matter of law.

3       3.   Qualified Immunity

4       Pursuant to Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150

5   L.Ed.2d 272 (2001), qualified immunity involves a two step

6   analysis.   Initially, the Court must determine whether the facts

7   asserted show that a constitutional violation occurred.   Id. at

8   201.  Defendants submit that as set forth above, Plaintiff's claims

9   of false arrest and excessive force do not even support the

10  conclusion that a constitutional violation occurred.   However, if

11  the Court concludes otherwise, the Court must then proceed to the

12  second step of the qualified immunity analysis which is to

13  determine whether the officer violated a clearly established

14  constitutional right.  Id.   The "clearly established" analysis is

15  not to be reviewed as a broad general proposition but instead in

16  the narrower view of whether the officer's actions in light of the

17  specific particulars of the case were reasonable.  Id. at 201-02.

18  Saucier states:

19
20          The relevant, dispositive inquiry in determining whether
            a right is clearly established is whether it would be
21          clear to a reasonable officer that his conduct was
            unlawful in the situation he confronted.

22  Id. at 202.

23      As to the excessive force claim, Saucier is much like the case

24  at bar.   The plaintiff in Saucier claimed that the defendant

25  unnecessarily shoved him violently into a van to get him away from

26  the scene where the Vice-President was speaking.   Id. at 208.

27  Assuming the shove was excessive, the Court still found qualified

28  immunity was proper because the defendant's actions were within the

1   scope of what a reasonable officer would have done.   Id.

2        In the case at bar, Officer Arambula had to put Plaintiff's

3   arm behind her back for handcuffing.   Qualified immunity is viewed

4   from the perspective of the defendant officer.   Id.   In this case,

5   Officer Arambula's perspective was that Plaintiff had not complied

6   with his instructions to move away and Plaintiff had tried to pull

7   away from him.   All that Plaintiff alleges is that her arm was

8   twisted (which is obviously necessary to get it behind her back)

9   and Officer Arambula tightened his grip during the encounter.   In

10  light of the context of this case, Officer Arambula cannot be held

11  liable even if he used some additional force to accomplish

12  handcuffing Plaintiff.

13        "The reasonableness of the officer's belief as to the

14  appropriate level of force should be judged from that on-scene

15  perspective" and the officer's actions are justified even when a

16  reasonably mistaken belief that more force than in fact is needed

17  is made by the officer.   Id. at 205.   It is easy to second guess

18  police officers who necessarily need to make quick decisions and

19  the Supreme Court has made clear that qualified immunity protects

20  all but the unreasonable actions of police.

21
22        The deference owed officers facing suits for alleged
        excessive force is not different in some qualitative
23      respect from the probable cause inquiry in Anderson.
        Officers can have reasonable, but mistaken, beliefs as to
        the facts establishing the existence of probable cause or
24      exigent circumstances, for example, and in those
        situations courts will not hold that they have violated
25      the Constitution. Yet, even if a court were to hold that
        the officer violated the Fourth Amendment by conducting
26      an unreasonable, warrantless search, Anderson still
        operates to grant officers immunity for reasonable
27      mistakes as to the legality of their actions.  The same
        analysis is applicable in excessive force cases, where in
28      addition to the deference officers receive on the

                              - 11 -

1       underlying constitutional claim, qualified immunity can
2       apply in the event the mistaken belief was reasonable.

3   Id. at 206.  Plaintiff's allegations, like those in Saucier, cannot

4   defeat qualified immunity because even if the force used was in

5   some manner excessive it clearly was not beyond the bounds of what

6   a reasonable officer could have believed was necessary under the

7   particular circumstances of this case.

8        The same analysis applies to Plaintiff's false arrest claim.

9   It is clearly appropriate to arrest a person for obstruction when

10  they fail to comply with instructions to move away from a traffic

11  stop.   Upon Plaintiff's failure to back away from the scene,

12  Officer Arambula could have reasonably believed there was probable

13  cause  to  arrest  Plaintiff.   As  such,  qualified  immunity  also

14  defeats Plaintiff's false arrest claim.

15       4.   Municipal Liability

16            a.   Monell Liability

17       As  a  municipal  employer,  the  District  is  not  subject  to

18  damages  under  42  U.S.C. § 1983  unless  the  municipality  itself

19  caused the constitutional deprivation; liability for damages is not

20  imposed under the theory of respondent superior.   Monell v. Dept.

21  of Social Services, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d

22  611 (1978).  In Monell, the Court Stated:

23            a  local  government  may  not  be  sued  for  any
              injury  inflicted  solely  by  its  employees  or
24            agents.   Instead,  it  is  when  execution  of  a
              government's  policy  or  custom,  whether  made  by
25            its  lawmakers  or  by  those  whose  edicts  or  acts
              may  fairly  be  said  to  represent  official
26            policy,   inflicts   the   injury   that   the
              government  as  an  entity  is  responsible  under
27            §1983.

28  Id. at 694.  Municipal liability may be established in one of three

- 12 -

ways: (1) establishing the constitutional violation occurred pursuant to a custom or policy of the municipal defendant; (2) establishing the constitutional violation was caused by a final policymaking official; or (3) establishing the subordinate's constitutional violation was ratified by a final policymaking official. Gillette v. Delmore, 979 F.2d 1342, 1347 (9th Cir. 1992). A prerequisite to municipal liability under Monell is that there be an underlying Section 1983 violation. Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996). As demonstrated above, Plaintiff did not suffer any violation of her constitutional rights; therefore, her Monell claim must also fail. Id.

Moreover, Plaintiff cannot establish a Monell claim under any of its three theories. Plaintiff does not claim Officer Arambula was a final policymaking official for the purposes of Monell but has alleged he was acting pursuant to a custom or policy and that the District ratified his actions. Exhibit 1 at paragraph 29. Plaintiff claims the following support her claim that the District had a custom or policy which violated her rights:

- Plaintiff tried to contact Lt. Young about an investigation into the matter however he never contacted her back and she was not informed that any corrective action was taken;

- at the time of the incident Officer Arambula "was training another police officer that day and was acting in a supervisory capacity," and was not disciplined; and

- Plaintiff asserts Sgt. Russo told the school principal that Officer Arambula acted appropriately and should have arrested Plaintiff.

Exhibit 6 at Response to Interrogatory No. 9 at p. 2. Plaintiff claims the following, in addition to the above 3 factors, supports her claim that the District ratified Officer Arambula's actions:

1
2
3
- Plaintiff met with Jennifer Powers of the District's
risk management office on February 15, 2005, to discuss
the matter and after she told Ms. Powers she had an
attorney Ms. Powers would not continue the meeting.

4  Exhibit 6 at Response to Interrogatory No. 10 at p. 3.

5      To maintain a cause of action under Section 1983 for damages

6  against the District, Plaintiff's initial burden is to demonstrate

7  that the conduct she complains of was carried out pursuant to

8  official District policy or custom.  A "policy" is a decision by a

9  municipality's duly constituted legislative body.  Board of County

10  Commissioners v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1382, 137

11  L.Ed.2d 626 (1997).  A "custom", while not having been formally

12  approved by an appropriate decision maker, is a practice so

13  widespread as to have the force of law.  Id. at 404.  The policy or

14  custom must have lead to the alleged constitutional violation.

15  Oviatt v. Pearce, 954 F.2d 1470, 1477-78 (9th Cir. 1992).  A single

16  incident or unconstitutional act by a non-policymaking employee

17  cannot establish the existence of a custom or policy.  Davis v.

18  City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir. 1989).

19      There is absolutely no evidence of any policy or custom of

20  excessive force or unlawful arrests for Plaintiff to rely upon.  In

21  fact, all the assertions in Plaintiff's interrogatory answers

22  listed above, except for the assertion Officer Arambula was acting

23  as a training officer, occurred after the fact so they simply

24  cannot evidence a policy or custom that caused a constitutional

25  violation to Plaintiff on January 13, 2005.  And while Officer

26  Arambula was acting as a training officer, that is of no relevance.

27  Plaintiff does not claim Officer Arambula is a final policymaker

28  and municipal liability is not premised upon respondeat superior.

1        Plaintiff also cannot support a theory of ratification.
2   Ratification requires that a final policymaker "approve the
3   subordinate's decision and the basis for it before the policymaker
4   will be deemed to have ratified the subordinate's discretionary
5   decision." Gillette, 979 F.2d at 1348.  Plaintiff's reference to
6   her meeting with Jen Powers is of no support for Plaintiff's claim.
7   Ms. Powers was employed by the District's risk management
8   department which processes worker's compensation claims.  Exhibit
9   7.  Ms. Powers was simply doing her job to process Plaintiff's
10  worker's compensation claim.  Id.  Ms. Powers did not "approve"
11  Officer Arambula's actions and she is not a final policymaker as
12  required for ratification to occur.  Plaintiff's reference to
13  Sergeant Russo is also without merit.  Officer Arambula filed a
14  "Use of Force" report as required. Exhibit 8.  Within the report,
15  Officer Arambula's description of the incident was reviewed by his
16  sergeant, Sergeant Russo, and then the sergeant's review was
17  reviewed by his lieutenant, Lieutenant Young.  Id.  Plaintiff is
18  apparently referring to Sergeant Russo's comment that if a use of
19  force occurs the suspect should be charged with the criminal
20  offense being committed. Id. at p. 2.  Lieutenant Young clarified
21  in his review on the report and also testified at his deposition
22  that there is no policy that an arrest is mandatory and the officer
23  has the discretion to "release" an individual if he chooses to do
24  so. Id; Exhibit 5 at p. 13, l. 3 – 14, l. 19.  Sergeant Russo did
25  not "approve" Officer Arambula's actions (in fact he disapproved of
26  not charging Plaintiff) and he is not a final policymaker as
27  required for ratification to occur.

28

1                    b.   *Failure to Train Allegations*

2          Plaintiff's fourth cause of action asserts the District failed

3     to train its officers so they "would not use excessive force on

4     school teachers who approach stopped vehicles . . . ."  Exhibit 1

5     at paragraph 35.   In her interrogatory answers, when asked to

6     identify the basis for her failure to train allegation, Plaintiff

7     simply referred to her answer regarding her <u>Monell</u> custom/policy

8     claim.   Exhibit 6 at Response to Interrogatory No. 16 at p. 4.

9     That interrogatory response merely asserts:

10
              - Plaintiff tried to contact Lt. Young about an
11            investigation into the matter however he never contacted
              her back and she was not informed that any corrective
12            action was taken;

13            - at the time of the incident Officer Arambula "was
              training another police officer that day and was acting
14            in a supervisory capacity," and was not disciplined; and

15            - Plaintiff asserts Sgt. Russo told the school principal
              that Officer Arambula acted appropriately and should have
16            arrested Plaintiff.

17    Exhibit 6 at Response to Interrogatory No. 9 at p. 2.

18          A Section 1983 claim asserting inadequate police training was

19    recognized in <u>City of Canton v. Harris</u>, 489 U.S. 378, 109 S.Ct.

20    1197, 103 L.Ed.2d 412 (1989).   However, such a claim requires a

21    high degree of proof.   Failure to train claims are only cognizable

22    when the evidence shows there was deliberate indifference on the

23    part of the municipality.   <u>Id</u>. at 388.   The failure to train will

24    only amount to an unlawful policy where "the need for more or

25    different training is so obvious, and the inadequacy so likely to

26    result in the violation of constitutional rights, that the

27    policymakers . . . can reasonably be said to have been deliberately

28    indifferent to the need."   <u>Id</u>. at 389-90.   Deliberate indifference

1   is a stringent standard of fault requiring that the defendant

2   "disregarded a known or obvious consequence of [its] action."

3   Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397,

4   407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

5       Plaintiff has not identified any alleged training deficiency.[2]

6   In fact, her interrogatory response identifying the basis for her

7   failure to train claim does not even mention any training issues.

8   Just as with the policy/custom theory under Monell, the incident

9   itself is insufficient to support a failure to train claim.  There

10  is simply no basis for a Section 1983 failure to train claim.

11      5.   Punitive Damages Request

12      Plaintiff has made a request for punitive damages under her

13  Section 1983 claims.  Exhibit 1.  Punitive damages may not be

14  awarded against the District; therefore, any such request must be

15  dismissed.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247,

16  271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); Herrera v. Las Vegas

17  Metro Police Dep't, 298 F.Supp.2d 1043, 1055 (D. Nev. 2004).

18      Punitive damages may be awarded against an individual Section

19  1983 defendant; however, there is no basis for such in the case at

20  bar.  Punitive damages are only recoverable "when the defendant's

21  conduct is shown to be motivated by evil motive or intent or when

22  it involves reckless or callous indifference to the federally

23  protected rights of others."  Smith v. Wade, 461 U.S. 30, 56, 103

24  S.Ct. 1625, 75 L.Ed.2d 632 (1983).

25      While Defendants submit Officer Arambula's actions were

26  proper, even if the Court determines there are triable issues, at

27

28      [2] Plaintiff did not disclose any expert witness for any issues, including police training.

- 17 -

1   most the issues are whether Officer Arambula acted reasonably.  As
2   for the arrest, Plaintiff knowingly approached right up to the car
3   during a traffic stop with the knowledge that the officers were
4   investigating the car/driver and Officer Arambula attempted to have
5   her step back.  As for the excessive force claim, Officer Arambula
6   did not use any weapon or other device such as a chemical agent and
7   did not strike Plaintiff or take her down.  He merely used his
8   hands to put Plaintiff's arm behind her back for handcuffing.
9   Plaintiff was handcuffed for no more than 5 minutes and Officer
10  Arambula used his discretion to let her go with a warning.  It must
11  be remembered that Plaintiff admits to attempting to pull away from
12  Officer Arambula when he first made contact with her.  This would
13  provide substantial support for an officer to believe the
14  individual is not complying with the officer's directions and that
15  the officer may need to use some force to handcuff the suspect.

16      There are certainly cases where a punitive damages request
17  should be dismissed even if the court allows an underlying claim to
18  proceed.  In <u>Ward v. City of San Jose</u>, 967 F.2d 280 (9th Cir. 1992),
19  the Ninth Circuit did exactly that.   In <u>Ward</u>, several police
20  officers shot and killed a suspect.  <u>Id.</u> at 282.  The court decided
21  that while a trial on the fourth amendment excessive force claim
22  was necessary, the punitive damages claim was properly dismissed.
23  <u>Id</u>. at 286.   The court concluded that whether the officers
24  "responded reasonably in the moments that followed" encountering
25  the decedent, *i.e.* shooting him, was for the jury to decide;
26  however, there were no facts to establish a claim to punitive
27  damages.   <u>Id</u>.  Plaintiff's desire to have someone second-guess
28  Officer Arambula's necessarily quick decisions does not support a

1  claim to punitive damages even if the court allows a jury to rule

2  on the reasonableness of his judgments.

3      C.   **PLAINTIFF'S STATE LAW ASSAULT AND BATTERY CLAIM**

4      Plaintiff's fifth cause of action is for assault and battery.

5  As discussed above, Plaintiff's arrest was upon probable cause and

6  there was no excessive force used; therefore, her state law claim

7  must also fail.  Additionally, state law discretionary immunity

8  defeats Plaintiff's assault and battery claim.[3]  NRS 41.032.  The

9  Nevada Supreme Court has held that a police officer's decisions to

10  stop and arrest a person are discretionary acts for which immunity

11  applies.  Ortega v. Reyna, 114 Nev. 55, 953 P.2d 18 (1998).  The

12  Nevada Supreme Court has further held that the manner in which a

13  police officer handcuffs a suspect is a discretionary act for which

14  immunity applies.  Maturi v. Las Vegas Merto Police Dep't, 110 Nev.

15  307, 871 P.2d 932 (1994).

16      Pursuant to Ortega and Maturi, Nevada federal district courts

17  have applied NRS 41.032 to police officer conduct of detaining

18  persons and uses of force.  For example, in Herrera v. Las Vegas

19  Metro Police Dep't, 298 F.Supp.2d 1043 (D. Nev. 2004), the

20  decedent's family brought state law claims, including wrongful

21  death, after several escalating types of force were used against

22  the decedent who was eventually shot and killed.  Id. at 1047-48.

23  The court applied NRS 41.032 concluding how officers approached and

24  their decisions on how to interact with the decedent, including the

25  uses of force, were discretionary acts.  Id. at 1054; see also

26

27      [3] Plaintiff's sixth cause of action is a respondeat superior claim against the District.  That

28  claim is dependant on the assault and battery claim so if the fifth cause of action is dismissed so must
   be the sixth cause of action.

- 19 -

1 <u>Neal-Lomax v. Las Vegas Metro Police Dep't</u>, 2006 U.S. Dist. LEXIS
2 49692 (D. Nev. September 14, 2006)[4] (dismissal of negligence claim
3 pursuant to NRS 41.032 related to using a "taser" on a suspect);
4 <u>Kiles v. City of N. Las Vegas</u>, 2006 U.S. Distr. LEXIS 47709 (D.
5 Nev. July 11, 2006)[5] (dismissal of emotional distress, assault and
6 battery claims pursuant to NRS 41.032 for detaining and use of
7 force against individual); <u>Chiles v. Underhill</u>, 2006 U.S. Distr.
8 LEXIS 25634 (D. Nev. February 16, 2006)[6] (dismissal of state law
9 claims, including battery, pursuant to NRS 41.032 for arrest of
10 student by school district police officer).

11 Plaintiff has also made a request for punitive damages under
12 her state law claim. Exhibit 1. Punitive damages are not
13 recoverable against the District or Officer Arambula under Nevada
14 law. NRS 41.035(1). Therefore, the request for punitive damages
15 under the state law claim must be dismissed.

16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /

25 _____

26 [4] Case No. 2:05-CV-1464-PMP (RJJ)

27 [5] Case No. 2:03-CV-1246-KJD (PAL)

28 [6] Case No. 3:05-CV-0179-LRH (RAM)

## V.      CONCLUSION

        Based  upon  the  above,  the  District  and  Officer  Arambula
respectfully  request  that  the  Court  find  there  are  no  genuine
issues  of  material  fact  for  trial  and  dismiss  this  matter  in  its
entirety.

                DATED this 30th day of October, 2006.

                              CLARK COUNTY SCHOOL DISTRICT
                              OFFICE OF THE GENERAL COUNSEL

                       By:    _____/s/_____
                              S. SCOTT GREENBERG
                              Nevada Bar No. 4622
                              5100 W. Sahara Ave.
                              Las Vegas, NV 89146
                              Attorney for Defendants

### CERTIFICATE OF ELECTRONIC FILING SERVICE

        I HEREBY CERTIFY that on the 30th day of October, 2006, I
electronically filed **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**, with
the  United  States  District  Court,  District  of  Nevada's  CM/ECF
System thereby completing service upon Plaintiff's counsel, Robert
Spretnak, Esq., who is a registered Filing User.

                       _____/s/_____
                       AN EMPLOYEE OF THE CLARK COUNTY
                       SCHOOL DISTRICT

**INDEX OF EXHIBITS**

1.  Plaintiff's Complaint;

2.  Frank Arambula deposition excerpts;

3.  Roger Jacks deposition excerpts;

4.  Plaintiff deposition excerpts;

5.  Ken Young deposition excerpts;

6.  Plaintiff's Responses to Clark County School District's Second
    Set of Interrogatories;

7.  Affidavit of Roque Lapuz, Jr.

8.  Use of Force Report (Exhibit 5 to Young deposition)