```
 1  OFFICE OF THE GENERAL COUNSEL
    CLARK COUNTY SCHOOL DISTRICT
 2  S. SCOTT GREENBERG, ESQ.
    Nevada Bar No. 4622
 3  5100 W. Sahara Ave.
    Las Vegas, NV 89146
 4  (702) 799-5373
    Attorneys for Defendants
 5
```

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| DIANE CRUMP-RICHMOND, | CASE NO. 2:05-cv-1309-RLH(GWF) |
|---|---|
| Plaintiff, | |
| v. | |
| FRANK ARAMBULA; and CLARK COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada, | |
| Defendants. | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COME NOW, Defendants Clark County School District ("District") and Frank Arambula, by and through their counsel, and hereby file their Reply Brief in Support of the Motion for Summary Judgment. This Reply Brief is based upon the following Memorandum of Points and Authorities, the supporting exhibits attached hereto and the other papers and pleadings on file with the Court in this matter along with any argument allowed by the Court.

DATED this 29nd day of December, 2006.

                                        CLARK COUNTY SCHOOL DISTRICT
                                        Office of the General Counsel

                                   By:  _____/s/_____
                                        S. SCOTT GREENBERG
                                        Nevada Bar No. 4622
                                        5100 W. Sahara Ave.
                                        Las Vegas, Nevada 89146
                                        Attorney for Defendants

1 **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.   INTRODUCTION**

3     While the Opposition continually refers to Plaintiff as being slight in stature and 60 years old[1] and portrays her as simply trying to help, the facts are she was an athletic dance teacher who testified that she worked-out every day and admittedly thrust herself into a law enforcement vehicle stop by questioning both the driver of the car and the officers.[2]  The physical size of Plaintiff does not exempt her from being arrested nor does it exempt her from being handcuffed.  Plaintiff's Opposition fails to dispute the 2 most significant pieces of evidence supporting the summary judgment motion - that Officer Arambula asked Plaintiff to move away which she did not and that she attempted to pull away from Officer Arambula when he was handcuffing her.

    And while the Opposition attempts to portray this case as some type of horrific encounter between Plaintiff and Officer Arambula resulting in serious injuries, the facts are that Plaintiff admits she was handcuffed for only approximately 5 minutes (which was preceded by interaction between her and Officer Arambula that only lasted minutes)  and her "injuries" were a bruised arm and a claim

---

[1] It is unclear why the Opposition finds it necessary to mention many times that Plaintiff is African-American.  There are absolutely no allegations that this matter had anything to do with race. The Opposition also asserts Plaintiff and Officer Arambula knew each other "from working together frequently during school extra-curricular activities."  Opposition at p. 5, ll. 12-14.  This is based upon Plaintiff's testimony that she once had a conversation with Officer Arambula at a girls basketball game and then saw him at basketball games on other occasions.  Opposition at Exhibit 15, p. 79 at ll. 6-12.  Any factual dispute over whether Officer Arambula should have recognized Plaintiff is not material for the purposes of summary judgment.

[2] The Opposition admits Plaintiff was talking directly to the "suspect," i.e. the driver of the stopped car.  Opposition at p. 5, ll. 1-4.

that her shoulder was sore.³  Immediately after the incident, Plaintiff was in fact able to go with her dance team to UNLV for a dance performance which started at about 1:30 p.m. and she did not leave UNLV until approximately 10:30 p.m. at which time she went and ate dinner with her husband at Marie Callender's.  Opposition at Exhibit 15, pp. 17-20.  Plaintiff helped the dance team pack their many costumes and props and was even able to go to a store to buy flowers for the dancers as a surprise.  Id.

The Opposition spends considerable time discussing whether there was an "investigation" following the incident.  Principal Jacks testified that he specifically told Plaintiff if she wanted to make a complaint about the police she needed to file a complaint with the school district police department. Opposition at Exhibit 16, p. 98, ll. 2-18.  Plaintiff testified that she only tried to telephone Lt. Young but was never able to get in touch with him. Lt. Young testified that he returned her call but also was never able to speak with Plaintiff.  The Court should note that Plaintiff testified at her deposition that she spoke to an attorney about the matter within the first week after the incident.  Opposition at Exhibit 15, p. 147, ll. 6-18.  Plaintiff is a well educated person and she had even sought legal advice almost immediately after the incident; however, she never took action to initiate a police complaint.  While there are some factual disputes surrounding these events, for example Plaintiff denies Lt. Young tried to contact

---

³ Plaintiff refers to her injury as a rotator cuff injury. There is no medical evidence presented to substantiate such a diagnosis. Plaintiff's entire medical treatment following this incident was a trip to Pecole Ranch Quick Care the following day which diagnosed her as having a bruised arm and then a single trip to her family physician 2 weeks later on February 2, 2005.

- 3 -

1  her, none of the events that followed the actual incident are
2  material to the summary judgment motion as will be explained below.
3  **II.   OBJECTIONS TO HEARSAY EXHIBITS OFFERED BY PLAINTIFF**
4  　　　A court may only consider admissible evidence when ruling on
5  a summary judgment motion. Orr v. Bank of America, 285 F.3d 764,
6  773 (9th Cir. 2002). Many of the exhibits submitted with the
7  Opposition are inadmissible written statements; therefore, they may
8  not be considered by the Court. These are Exhibits 1, 3-4 and 6-
9  11. All these are unsworn witness statements and are hearsay.
10 Pursuant to Fed.R.Evid. 801(c), none of these unsworn statements
11 can be considered by the Court.
12 **III.  LEGAL ANALYSIS**
13 　　　**A.    PLAINTIFF'S SECTION 1983 CLAIMS**
14 　　　　　1.  Plaintiff's Excessive Force Claim
15 　　　The Opposition spends considerable time discussing Plaintiff's
16 excessive force claim but fails to recognize Plaintiff was being
17 handcuffed because she was being arrested. And contrary to the
18 theme of the Opposition that a misdemeanor offense is no big deal,
19 it is well within the contours of the Constitution to arrest an
20 individual for a misdemeanor offense committed in the presence of
21 an officer. Atwater v. City of Lago Vista, 532 U.S. 318, 121 S.Ct.
22 1536, 149 L.Ed.2d 549 (2001).
23 　　　It is clearly lawful to handcuff an individual that is being
24 arrested, i.e. handcuffing is not excessive force. It is only the
25 excessive use of force in handcuffing a person that creates a
26 constitutional violation. See Hansen v. Black, 885 F.2d 642, 645
27 (9th Cir. 1989) (analyzing whether excessive force was used to
28 handcuff arrestee). The only claimed excessive force is that

1  "increasing pressure" was used to "pin[] [Plaintiff's arm] behind
2  her back at an awkward angle." Opposition at p. 16, ll. 7-8. The
3  Opposition however completely ignores Plaintiff's admission that
4  **SHE TRIED TO PULL AWAY FROM OFFICER ARAMBULA** while he was arresting
5  her.  Motion at Statement of Material Facts, No. 7.  Given that
6  Plaintiff was resisting, Officer Arambula was lawfully entitled to
7  use additional force to place Plaintiff's hand behind her back for
8  handcuffing.  Officer Arambula did nothing more than use his hands
9  to place Plaintiff's hands behind her back for handcuffing - he did
10 not strike her, did not take her down, did not use any weapon or
11 chemical agent - and he is entitled to use force to accomplish such
12 task especially given Plaintiff's admission that she was resisting.
13 Case law in fact recognizes that additional force can be used to
14 handcuff a person who is merely twisting or turning away from
15 officers attempting to handcuff the person. <u>Burchett v. Kiefer</u>,
16 310 F.3d 937 (6th Cir. 2002).
17     2.   <u>Plaintiff's False Arrest Claim</u>
18     The Opposition is correct that the question is whether
19 probable cause existed to arrest Plaintiff.  Other than her own
20 deposition testimony, Plaintiff's Opposition attempts to rely on
21 Principal Jacks testimony/statement and unsworn witness statements.
22 Opposition at p. 17, l. 26.  Principal Jacks cannot supply any
23 relevant evidence in regard to Plaintiff's arrest as it is
24 undisputed that he only arrived at the scene <u>after</u> Plaintiff had
25 . . .
26 . . .
27 . . .
28 . . .

1  been arrested. Opposition at Exhibit 16, p. 14, ll.15-21.[4]
2  Additionally, the witness statements are inadmissible hearsay under
3  Fed.R.Evid. 801(c).[5]

4  Plaintiff did not need to be threatening or belligerent for
5  probable cause to exist for her arrest for obstructing an officer.
6  It is undisputed that Plaintiff injected herself into a known law
7  enforcement vehicle stop. Plaintiff admits she tried to converse
8  with the "suspect." Officer Arambula testified that he directed
9  Plaintiff to move away on more than one occasion and she did not
10 comply. Case law clearly provides that a bystander failing to move
11 away from a vehicle stop when directed provides probable cause for
12 an arrest for obstructing a police officer. See In re Muhammed, 95
13 Cal.App.4th 1325, 116 Cal.Rptr.2d 21 (Ct.App.Calif 2002); State of
14 Washington v. Lalonde, 665 P.2d 421, 35 Wn. App. 54 (Wash.App.
15 1983) (individual that approached officer arresting suspect to
16 supposedly "calm things down" guilty of obstructing police officer
17 as he refused to back away as instructed by officer). These cases
18 were cited in the Motion and the Opposition simply ignores them.

19 Plaintiff testified that she did not remember if Officer
20 Arambula instructed her to move away from the car. Opposition at
21 Exhibit 15, p. 82 at ll. 3-6. Plaintiff cannot create a genuine
22 issue of material fact by testifying that she does not remember

---

[4] The Opposition portrays Plaintiff as a model employee that has never had any problems at work. Her history is not material to deciding the motion for summary judgment. The Opposition fails to note that Officer Arambula has been a District police officer since approximately 1991 and has never had any type of alleged misconduct levied against him.

[5] While the witness statements are inadmissible, it should be noted that at least one of the witnesses reported hearing Officer Arambula tell Plaintiff to move away and seeing Plaintiff pull away from Officer Arambula before she was arrested. Opposition at Exhibit 8.

- 6 -

whether or not Officer Arambula instructed her to move away. Plaintiff's noncommital testimony leaves Officer Arambula's testimony undisputed. His testimony clearly sets forth sufficient evidence to find probable cause for Plaintiff's arrest. Additionally, Principal Jacks testified at his deposition that Plaintiff admitted to him that Officer Arambula had directed her to step away from the car. Opposition at Exhibit 16, p. 83, ll. 19-22. Moreover, Plaintiff's admission that she tried to pull away from Officer Arambula also would provide probable cause for her arrest for obstructing a police officer.

### 3. Qualified Immunity

The Opposition opposes summary judgment based upon qualified immunity for the excessive force claim by comparing this case to Palmer v. Sanderson, 9 F.3d 1433 (9th Cir. 2003). In Palmer, the plaintiff alleged the officer handcuffed him too tightly and refused to loosen the handcuffs. No such assertion is made in this case.[6] Again, the Opposition completely ignores Plaintiff's admission that she was attempting to pull away form Officer Arambula. Not only did that provide a legitimate basis for Officer Arambula to use additional force, it certainly provides the basis for an officer to reasonably believe additional force will be necessary. Just like in Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), even if in hindsight someone was to second-guess Officer Arambula and decide he may have used to much force, it would have been reasonable for an officer confronted with

---

[6] And if such a claim was asserted it would necessarily fail as a matter of law given it is undisputed Officer Arambula removed the handcuffs within 5 minutes of initially placing them on Plaintiff.

1  a person being arrested who was trying to pull away to use
2  additional force to place the person's hand behind her back for
3  handcuffing.
4      The same analysis applies to Plaintiff's false arrest claim.
5  It is clearly appropriate to arrest a person for obstruction when
6  they fail to comply with instructions to move away from a traffic
7  stop.  Upon Plaintiff's failure to back away from the scene,
8  Officer Arambula could have reasonably believed there was probable
9  cause to arrest Plaintiff.  Furthermore, Plaintiff's admitted
10 attempt to pull away from Officer Arambula would provide probable
11 cause for a reasonable officer to believe the person was
12 obstructing.  As such, qualified immunity also defeats Plaintiff's
13 false arrest claim.
14      4.  <u>Municipal Liability</u>
15      The Opposition argues that the District may be held liable for
16 Officer Arambula's actions based upon ratification under <u>Monell v.</u>
17 <u>Dept. of Social Services</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56
18 L.Ed.2d 611 (1978) and  failure to train District officers in the
19 use of force under <u>City of Canton v. Harris</u>, 489 U.S. 378, 109
20 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Opposition at p. 21, ll. 14-
21 17.  The Opposition's arguments as to municipal liability have no
22 basis in law or the facts of this case.
23      The Opposition agrees that ratification requires proof that
24 the "authorized policymakers approve a subordinate's decision and
25 the basis for it." Opposition at p. 22, ll. 10-11.  The sole basis
26 for ratification in this case is Plaintiff's assertions about
27 Lieutenant Young - that he did not return Plaintiff's phone calls
28 and that he "approve[d] the version set forth in Arambula's" use-

of-force report without conducting an investigation. Opposition at p. 23, ll. 10-13.[7]

Virtually all the arguments offered by Plaintiff are merely *respondeat superior* arguments offered under the guise of Monell. Moreover, Lt. Young's actions cannot support Plaintiff's ratification theory because he is not a final policymaker. The Opposition does not even attempt to argue that he is. One looks to state law to determine who is a final policymaker for the purposes of Monell. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989). School districts are empowered to employ police officers under NRS 391.100(8). If a school district does employ police officers, it must create a police department headed by a "law enforcement officer to serve as the chief of school police who is supervised by the superintendent of schools of the school district." Id. As shown by the organizational chart in Exhibit 1, the lieutenant position is below that of the captain position which in turn is underneath CCSD Chief of Police Garcia.[8] Chief Garcia is supervised by the District's superintendent who in turn reports to the Board of Trustees. Policymaking authority for the District is vested in its Board of Trustees. NRS 386.350 (General Powers); NRS 386.360 (Plan of Implementation of Statutes); NRS 386.365 (Policies and Regulations, Notice to Public). Plaintiff offers no evidence upon which the

---

[7] The Opposition argues that Lt. Young falsely accused Plaintiff of acting in a similar manner previously. Opposition at p. 23, ll. 13-15. There is no defamation claim in this case. The Opposition fails to explain how such has anything to do with allegedly ratifying Officer Arambula's conduct, which it does not.

[8] Exhibit 1 can be found at the District's website - ccsd.net\directory\police.

1  Court could conclude Lt. Young is a final policymaker for the
2  District; therefore, Plaintiff has failed to establish this
3  essential element for ratification under <u>Monell</u>.

4  Furthermore, the subordinate's action and the basis for it
5  must be specifically approved by the final policymaker for
6  ratification to occur. <u>Gillette v. Delmore</u>, 979 F.2d 1342, 1348
7  (9th Cir. 1992). Not overruling a subordinate's actions cannot
8  amount to ratification. In <u>Gillette</u>, the Ninth Circuit held that
9  even though the City Manager failed to overrule the employee's
10 discipline that would not be sufficient to ratify the
11 subordinate's unconstitutional dismissal of the plaintiff. <u>Id</u>.
12 Ratification requires that the policymaker make a "deliberate
13 choice from among various alternatives to follow a particular
14 course of action." <u>Id</u>. In the case at bar, Lt. Young was merely
15 reviewing Officer Young's report of his action as one of his
16 supervisors. Opposition at Exhibit 17, p. 14-15. Lt. Young was
17 not considering Plaintiff's claims of constitutional violations.
18 That is obvious from the fact that Lt. Young was not made aware of
19 Plaintiff's allegations.[9] Officer Arambula's report clearly does
20 not evidence any constitutional violations - it simply reports that
21 Plaintiff failed to move away as instructed so she was arrested
22 which included placing her in handcuffs during which she was
23 resisting. Lt. Young was merely reviewing Officer Arambula's
24 description of the event therefore he could not have been making a
25 "deliberate choice from among various alternatives" as required by

---

[9] Given that Plaintiff complains that Lt. Young never made contact with her, it is clear that she did not tell him her claim that her rights had been violated.

- 10 -

the standard for ratification.  Indeed, Plaintiff fails to cite even one case holding that a supervisor's failure to overrule an employee's actions is sufficient for ratification.  As stated in Gillette:

> To hold [defendants] liable under section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983 law under the guise of Pembaur's "single decision" rule.  We decline to endorse this end run around Monell.

Gillette, 979 F.2d at 1449.  There is absolutely no legal or factual basis for finding ratification in the case at bar.[10]

The Opposition further argues that Plaintiff was acting pursuant to instructions given by Principal Jacks to try to de-escalate events when she approached the law enforcement vehicle stop therefore the District should be liable.  Opposition at pp. 23-24.  Defendants are at a complete loss to understand this argument and it contains no legal authority.  Plaintiff's actions are completely irrelevant to the Monell analysis.  The relevant inquiry is whether Officer Arambula was acting pursuant to an unconstitutional policy/custom.  And even if Plaintiff's actions were relevant to the analysis and Plaintiff could establish Principal Jacks set a custom/policy (which Plaintiff has not),

---

[10] Plaintiff's arguments are really an attack on the "investigation" and that no action was taken against Officer Arambula.  Such arguments are not relevant to a ratification theory but a different and very narrow Section 1983 theory of failure to investigate/discipline.  See Vann v. City of New York, 72 F.3d 1040, 1050 (2nd Cir. 1995).  Because the claimed municipal policy must itself be the moving force behind the plaintiff's alleged constitutional violation, City of Canton, 489 U.S. at 389, the investigation/discipline resulting from the actual incident is insufficient to state a claim.  Vann, 72 F.3d at 1050.  A plaintiff must establish a preceding municipal policy of failing to investigate/discipline that could be said to have caused officers to continue acting in an unconstitutional manner.  Id.  Plaintiff offers absolutely no evidence about any incidents other that hers; therefore, she cannot present a viable Section 1983 claim.

- 11 -

1  Plaintiff has not set forth a unconstitutional custom/policy -
2  <u>Monell</u> requires an unconstitutional custom/policy <u>not</u> a
3  constitutional one. <u>Monell</u>, 436 U.S. at 694. There would be
4  nothing wrong with a policy that teachers should try to diffuse
5  situations;[11] therefore, the custom/policy Plaintiff forwards cannot
6  support a <u>Monell</u> claim.

7      The Opposition then argues a failure to train theory.
8  Opposition at p. 24-25. Plaintiff's failure to train theory is not
9  only without merit it is completely frivolous. Plaintiff carries
10 the burden of proof that Officer Arambula was not adequately
11 trained - the District is not required to prove anything about its
12 training of officers. Plaintiff does not offer one shred of
13 evidence about officer training. The fact that Officer Arambula
14 was a training officer is completely irrelevant.[12] And Lt. Young's
15 actions have nothing to do with training in addition to the fact
16 that they occurred after the incident therefore they cannot have
17 been a moving force behind the alleged constitutional violation.
18 <u>City of Canton</u>, 489 U.S. at 389. Plaintiff offers no evidence at
19 all about training, no expert witness opinions on the issue and no
20 evidence about previous similar incidents either involving Officer
21 Arambula or any other District officer. Not only does the
22 Opposition fail to forward any evidence in regard to training it
23 also fails to offer any evidence that the District was deliberately

---

[11] It must be noted that there was nothing to diffuse. Officer Arambula and his partner were diligently doing there duty without any problems before Plaintiff decided to inject herself into the vehicle stop.

[12] There is no allegation that his partner (who was the trainee) violated Plaintiff's constitutional rights.

- 12 -

indifferent to training needs.  The failure to train will only amount to an unlawful policy where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need."  Id. at 389-90.  The Opposition is a complete and utter failure in offering anything in support of a failure to train claim.

    5.   Punitive Damages Request

The Court must decide whether Officer Arambula's alleged actions rise to the level to support punitive damages (if the Court allows any Section 1983 claim to proceed).[13]  It is clear that the standard for punitive damages and a Section 1983 violation are not equal - the punitive damages standard requires additional proof.

Plaintiff argues based upon Dang v. Cross, 422 F.3d 800 (9th Cir. 2005) that this case is proper for punitive damages.  In Dang, the plaintiff was punched and kicked by multiple officers, including in the head and groin, and placed in a choke hold while he was complying with the officers directions.  Id. at 803.  Nothing comparable occurred in the case at bar.  The most egregious allegation that Officer Arambula used excessive force by squeezing Plaintiff's arm and placing it behind her back must be viewed in context of Plaintiff's admission that she resisted being handcuffed.  If like in Dang, Plaintiff had been struck multiple times and placed in a choke hold maybe a claim for punitive damages

---

[13] The Opposition does not appear to oppose the request to dismiss the District from the punitive damages request.  The Opposition certainly offers no case law to dispute that the District is immune from punitive damages.

- 13 -

1  could proceed; however, the fact that some additional pressure was
2  used to handcuff Plaintiff while she was resisting does not rise to
3  the level of punishable conduct by way of punitive damages.  Not
4  only was a minimal amount of force used but Officer Arambula
5  released Plaintiff from the handcuffs in a matter of minutes and
6  let her go with just a warning.

7  Furthermore, the Opposition's rantings about lies are not only
8  without factual support but also not a legal justification for
9  punitive damages.  The Section 1983 claims are based upon Officer
10 Arambula's arrest and handcuffing of Plaintiff; the actions after
11 that are not relevant to Plaintiff's claims of constitutional
12 violations.  Officer Armabula's reports are accurate as Plaintiff
13 herself admits she was resisting and she cannot even conclusively
14 testify that she was not told to move away - in fact she admitted
15 to Principal Jacks that she was told to do so but continued to
16 speak to the driver of the car.  And a review of Principal Jacks'
17 deposition clearly shows that while he may not agree with all the
18 specific words used by Officer Arambula in his report he certainly
19 agrees with Officer Arambula's general description of the
20 interactions between the two - Principal Jacks was not at all happy
21 that one of his teachers was in handcuffs even though he had no
22 idea what had transpired and he made that obvious to the officers.

23 **B.  PLAINTIFF'S ASSAULT AND BATTERY CLAIM FAILS DUE TO STATE**
24 **LAW DISCRETIONARY IMMUNITY**

25 It is unclear why the Opposition is citing Washington state
26 law with respect to this issue as it is controlled by Nevada state
27 . . .
28

- 14 -

law.[14]  The Opposition fails to cite any case interpreting NRS 41.032 that would find Officer Arambula's decision to arrest Plaintiff and his actions as to how to accomplish handcuffing Plaintiff to be outside the doctrine of discretionary immunity.

Incredibly, the Opposition asserts that in cases where discretionary immunity has been applied there was not a finding that the plaintiff's constitutional rights were violated but that is exactly what occurred in the very first case cited in the Opposition, Carey v. Nev. Gaming Control Board, 279 F.3d 873 (9th Cir. 2002). Specifically, the opinion states:

> the false imprisonment occurred when [defendant] incarcerated Carey without probable cause and the battery occurred when [defendant] "handcuffed and chained [Carey] against his will in order to detain him" . . . "the acts that form the basis for Carey's battery and false imprisonment claims stem from [defendant's] decision to arrest Carey for failing to identify himself."

Id. at 878. The opinion then discusses Ortega v. Reyna, 114 Nev. 55, 953 P.2d 18 (1998) and states "[t]he present case is legally indistinguishable from Ortega" and affirms dismissal of the state law claims. Carey, 279 F.3d at 878. The court then analyzes Carey's Section 1983 claim asserting his Fourth and Fifth Amendment rights were violated by being arrested for failing to identify himself. Id. at 879-80. The court proceeds to hold "Carey's arrest violated the Fourth Amendment." Id. at 881. The court in

---

[14] The Opposition's quotation cited from Miller v. Clark County, 340 F.3d 959 (9th Cir. 2003) is misleading. The quotation is actually part of the parenthetical following the opinion's citation to McKinney v. City of Tukwila, 13 P.3d 631 (Wash.Ct.App. 2000). The Opposition fails to quote the beginning of the parenthetical which reads "holding that under Washington law a police officer is liable . . . ." Immunity under Washington state law is not based upon a discretionary immunity doctrine. McKinney, 13 P.3d at 640-41. Neither Miller nor McKinney are relevant to analyzing Nevada's discretionary immunity statute - NRS 41.032.

1  Carey did in fact find the plaintiff's Fourth Amendment rights had
2  been violated and also dismiss the state law claims based upon
3  Nevada's discretionary immunity statute.  Additionally, in Herrera
4  v. Las Vegas Metro Police Dep't, 298 F.Supp.2d 1043 (D. Nev. 2004),
5  this Court dismissed the state law claims based upon discretionary
6  immunity under NRS 41.032 even though the Court denied summary
7  judgment to the officers on the Section 1983 claim.  Id. at 1054.
8       The Opposition fails to make any argument to counter that
9  Officer Arambula's actions fall within the scope of discretionary
10 immunity as interpreted by the Nevada Supreme Court in Ortega and
11 Maturi and as applied by this Court in the numerous cases cited in
12 the Motion for Summary Judgment.  The Opposition's sole argument
13 that "officers do not have the discretion to disregard the Fourth
14 Amendment" (Opposition at p. 27, l. 7) is without merit as the
15 analysis of a Section 1983 claim under federal law and the analysis
16 of a state law claim under Nevada law, which maintains immunity for
17 discretionary acts, is completely separate and distinct.  Under
18 Nevada law, the nature of the officer's actions must be looked at,
19 and if they are within the category of discretionary acts, then
20 immunity applies to defeat state law claims.  The Opposition does
21 not even try to argue against the fact that the decision to arrest
22 and the actions taken to effectuate the arrest by handcuffing are
23 discretionary acts under Nevada law.  Therefore, pursuant to NRS
24 41.032, Defendants have immunity with respect to Plaintiff's state
25 law claims and they must be dismissed.
26 . . .
27 . . .
28 . . .

**IV. CONCLUSION**

For the above stated reasons, Defendants respectfully request that this matter be dismissed in its entirety.

DATED this 29th day of December, 2006.

>                                   CLARK COUNTY SCHOOL DISTRICT
>                                   OFFICE OF THE GENERAL COUNSEL
>
>                         By:            /s/
>                                   S. SCOTT GREENBERG
>                                   Nevada Bar No. 4622
>                                   5100 W. Sahara Ave.
>                                   Las Vegas, NV 89146
>                                   Attorney for Defendants

**CERTIFICATE OF ELECTRONIC FILING SERVICE**

I HEREBY CERTIFY that on the 29th day of December, 2006, I electronically filed **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**, with the United States District Court, District of Nevada's CM/ECF System thereby completing service upon Plaintiff's counsel, Robert Spretnak, Esq., who is a registered Filing User.

>                                          /s/
>                                   AN EMPLOYEE OF THE CLARK COUNTY
>                                   SCHOOL DISTRICT

**INDEX OF EXHIBITS**

1. CCSD Police Department Organizational Chart