# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DIANE CRUMP-RICHMOND, | Case No.: 2:05-cv-1309-RLH-GWF |
| Plaintiff, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#17) |
| FRANK ARAMBULA; and CLARK COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada, | |
| Defendants. | |

Before the Court is Defendants' **Motion for Summary Judgment** (#17), filed October 30, 2006. The Court has also considered Plaintiff's Opposition (#20), filed December 5, 2006, and Defendants' Reply (#23), filed December 29, 2006.

## BACKGROUND

Defendant Officer Frank Arambula ("Officer Arambula") is a Clark County School District police officer. On January 13, 2005, Officer Arambula was assisting in a traffic stop at Desert Pines High School ("Desert Pines"), which gave rise to the instant action. Desert Pines had been assigned extra police officers to patrol the area at student dismissal time because there had been fights and other types of problems requiring law enforcement. On January 13, 2005, Officer Arambula and his partner performed a traffic stop on a car that entered the Desert Pines parking lot

and stopped in a fire lane parked against traffic. Defendants' assertion is uncontroverted that the driver was not able to produce all the documentation being requested and was acting nervous. Officer Arambula was covering his partner who was engaged with the driver.

It is undisputed that Plaintiff approached the traffic stop and asked the officers as well as the driver of the vehicle: "Is everything OK?" Defendants claim at this point Officer Arambula twice asked Plaintiff to back away. However, Plaintiff claims that Officer Arambula gave no warning to back away. Defendants and Plaintiff agree that Officer Arambula handcuffed Plaintiff and led her away for obstruction of justice. Minutes later the Plaintiff was released.

For the reasons discussed below, the Motion for summary judgment will be denied as to the claims for excessive force, false arrest, qualified immunity, and granted as to all other claims..

## DISCUSSION

*Legal Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1293 (9th Cir. 1982). If the party seeking summary judgment meets its burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Commodity Futures Trading Comm'n*, 611 F.2d 270, 282 (9th Cir. 1979). Parties seeking to defeat summary judgment cannot stand on their

pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979). Likewise, "legal memoranda and oral argument are not evidence and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists." *British Airways Bd.*, 585 F.2d at 952.

All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. *Poller v. CBS, Inc.*, 368 U.S. 464, 473 (1962). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1298 (9th Cir. 1982).

*Excessive Force*

Defendants have failed to carry their summary judgment burden on this claim. Defendants claim that there is no dispute that "Officer Arambula asked Plaintiff to move away from the stopped car twice. Plaintiff failed to move away." (Mot. 4.) However, the only authority cited for this assertion is Officer Arambula's deposition. (*Id.*) This assertion is contradicted by Plaintiff's deposition testimony that Officer Arambula said nothing before touching Plaintiff. (Opp'n 6; citing Pl.'s Ex. 15, p. 81.)

The Court finds that whether the Plaintiff was warned to back away, prior to being handcuffed and subjected to the alleged excessive force, is a material issue of fact that needs to be resolved by a trier of fact. Therefore, the Defendants' Motion is Denied as to the excessive force claim.

*False Arrest*

Defendants state in closing their argument against the false arrest claim: "Probable cause existed to arrest Plaintiff when she failed to move back as instructed by Officer Arambula; therefore, there can be no false arrest as a matter of law." (Mot. 8.) However, the Court, as stated

3

1  above, finds that whether Plaintiff was warned to stand back before the officer grabbed her arm is
2  still disputed. Therefore, the Court will deny judgment as a matter of law on this claim.
3  <u>Qualified Immunity</u>
4  Defendants argue that the policeman's actions are protected by qualified immunity.
5  Defendants cite *Saucier v. Katz,* 533 U.S. 194, 206 (2001)*,* for the proposition that "the Supreme
6  Court has made clear that qualified immunity protects all but the unreasonable actions of police."
7  (Mot. 11.) However, for the reasons already stated above, the Court finds that there is a dispute as
8  to the reasonableness of Officer Arambula's actions. Therefore, the Court will not apply qualified
9  immunity as a matter of law.
10 <u>Municipal Liability: Ratification</u>
11 "The cases make clear that the unconstitutional discretionary actions of municipal
12 employees generally are not chargeable to the municipality under § 1983." *Gillette v. Delmore*,
13 979 F.2d 1342, 1347 (9th Cir. 1992). However, "[a] municipality can be liable for an isolated
14 constitutional violation if the final policymaker ratified a subordinate's actions." *Lytle v. Carl*,
15 382 F.3d 978, 988 n.2 (9th Cir. 2004). "A plaintiff cannot prove the existence of a municipal
16 policy or custom based solely on the occurrence of a single incident of unconstitutional action by a
17 non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989).
18 However, Plaintiff argues that according to the Ninth Circuit, liability can be established through a
19 single incident, but Plaintiff must show that the political subdivision acted with "deliberate
20 indifference" to the Plaintiff's constitutional rights. *Christie v. Iopa*, 176 F.3d 1231, 1240 (9th
21 Cir. 1999). To survive summary judgment, on claims of ratification or deliberate indifference, "a
22 plaintiff must establish a genuine issue of material fact as to the question whether the final
23 policymaker acted with deliberate indifference to the subordinate's constitutional violations." *Id.*
24 Plaintiff has failed to show that a final policymaker ratified or acted with deliberate
25 indifference to the alleged incident. Plaintiff further alleges that she was only acting under the
26 policy of her principal, trying to defuse the situation, when she was allegedly abused by Officer

Arambula. (*Id.* at 23-24.) Plaintiff argues that therefore the principal's actions should also be enough to hold Clark County School District liable. (*Id.* at 24.) However, the principal's policy for teachers to help defuse situations could certainly not be characterized as a policy that violates Plaintiff's constitutional rights. Therefore, this argument is without merit.

Plaintiff further states in her brief that "Lt. Young demonstrated deliberate indifference to these serious allegations. He refused to return [my] phone calls." (Opp'n 23.) However, Plaintiff has simply not shown that Lt. Young is a final policymaker with a requisite level of authority to attach liability to the municipality, even if he did ratify an action. Therefore both the deliberate indifference and the ratification arguments fail and the Defendants' Motion will be granted on this point.

Even if Lt. Young was a policymaker, Plaintiff has failed to show Lt. Young ratified the violation of Plaintiff's constitutional rights. Plaintiff asserts that Lt. Young ratified the action in his review of Officer Arambula's report of the incident. (Opp'n 24); (*see also* Opp'n Ex. 5.) However, Officer Arambula's report describes the model of conduct given the situation: he warned Plaintiff twice to back away, he placed his hand on Plaintiff's shoulder to guide her away, Plaintiff "began to be defiant saying 'NO ONE PUT THEIR HANDS ON ME' and refuse [sic] to move"; it was only at this point that Officer Arambula advised her that she was under arrest for obstructing and "placed her in handcuffs, she was resisting when I place [sic] her in cuffs." (Opp'n Ex. 5.) It is hard to see how Lt. Young's non-action, or even approval, upon receiving such a report, could be interpreted as a ratification of any violation of Plaintiff's constitutional rights.

Plaintiff also alleges that Lt. Young never returned Plaintiff's multiple phone calls and this constitutes deliberate indifference to the violation of Plaintiff's constitutional rights. However, Plaintiff admitted in her deposition that when she spoke with somebody during these phone calls, it was not Lt. Young, and during these calls she discovered there was some kind of internal reorganization going on, and was told that "someone" would get back with her. (Opp'n

Ex. 15, p. 148-49.)  Plaintiff also claims that "[she] thought [she] left a message."  (*Id.* at 149.)  Defendants admit that Lt. Young at least received notice of Plaintiff's messages because "Lt. Young testified that he returned her call but also was never able to speak with Plaintiff."  (Reply 3.)  There is no evidence as to what information Lt. Young received in any message.

More significantly, it is undisputed that Plaintiff never filed a complaint with the police department concerning this matter. (Opp'n Ex. 15, p. 149-152.)  She did not file a complaint despite the fact that she had spoken with an attorney within a week of the incident, and retained her current counsel within a month of the incident.  (*Id.* at 147, 152.)  It is apparent from the record that Plaintiff may have thought the principal was doing all the required filings to proceed with an investigation, and that she did not need to file a complaint.  (*Id.* at 117-121, 150-51.)  However, this subjective understanding cannot be transmogrified into deliberate indifference on the part of the Defendants.

For these reasons, Defendants' Motion will be granted as to the ratification claim.

*Municipal Liability: Failure to Train*

Plaintiff argues that the incident itself evidences a failure to train in the proper use of force such that liability could be imposed on the municipality. (Opp'n 24.)  The United States Supreme Court reversed a jury verdict because one of the instructions permitted the jury to impose liability on the municipality by inferring from "a single, unusually excessive use of force that it was attributable to inadequate training or supervision amounting to 'deliberate indifference' or 'gross negligence' on the part of the officials in charge." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985) (citations omitted).  The Supreme Court justified its concern with the following reasoning:

> We think this inference unwarranted; first, in its assumption that the act at issue arose from inadequate training, and second, in its further assumption concerning the state of mind of the municipal policymakers.  But more importantly, the inference allows a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker. . . .  *Monell*'s "policy or custom" requirement . . . was intended to prevent the imposition of

6

        municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers.

*Id.* The Court has already discussed why Plaintiff has not established a deliberate indifference to any violation. Furthermore, as stated above, Plaintiff has failed to show that any policymaker was involved sufficiently to establish municipal liability. Plaintiff has also failed to carry the burden established in *Tuttle* for asserting a failure to train claim based on a single incident. Single incidents are not enough to establish liability "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved." *Id.* at 823-24. As stated above, Plaintiff has failed to attribute an unconstitutional policy to a municipal policymaker. Plaintiff has also failed to separately prove the origin and existence of an unconstitutional policy.

        Therefore, the Court grants the Defendants' Motion as to Plaintiff's failure to train claim.

*Punitive Damages*

        Because "a municipality is immune from punitive damages under 42 U.S.C. § 1983," Plaintiff's petition for punitive damages against Defendant Clark County School District fails. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

        Punitive damages can be imposed on an individual § 1983 defendant "when the defendant's conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The Ninth Circuit has held that even though "[t]he decision to impose such sanctions is within the exclusive province of the jury," the Circuit held that defendants can still receive a directed verdict if all the evidence and its inferences "in the light most favorable to plaintiffs, can reasonably support a defense verdict only." *Ward v. San Jose*, 967 F.2d 280, 286 (1991). Similar to the situation in *Ward*, Plaintiff has not given any evidence for the Court to reasonably infer the

7

1  requisite malicious intent to permit a punitive damage award against Officer Arambula. The
2  reasonableness of Officer Arambula's actions may still be judged by the jury to determine whether
3  there was a violation of Plaintiff's constitutional rights. *See Id.* (allowing for a possible fourth
4  amendment violation to go to the jury but granting defendants summary judgment on punitive
5  damages).
6  Therefore, Defendants' Motion will be granted as to the claim for punitive
7  damages.
8  *Assault and Battery*
9  Defendants claim that they are statutorily immune from Plaintiff's assault and
10  battery claim. Plaintiff argues in response that "[a]ccording to the Ninth Circuit, 'a police officer
11  is liable for assault or battery in effecting an arrest only if the officer used force unreasonable
12  under the United States Constitution's Fourth Amendment." (Opp'n 26) (quoting *Miller v. Clark*
13  *County*, 340 F.3d 959, 969 (9th Cir. 2003)). However, Plaintiff sadly fails to include the three
14  enlightening words preceding the *Miller* quotation: "under Washington law." *Miller*, 340 F.3d at
15  969. *Miller* was ruling on Washington state law claims, interpreting a Washington case at the
16  time, and is not applicable to this Court's interpretation of Nevada law.
17  Nevada Revised Statute § 41.031 waives state immunity from liability in certain
18  instances. One of the exceptions to the waiver is pursuant to N.R.S. § 41.032 which protects
19  officers of the state from an action "[b]ased upon the exercise or performance . . . [of] a
20  discretionary function or duty on the part of the state or any of its agencies or political subdivisions
21  . . . whether or not the discretion involved is abused." *Id*. at § 41.032(2).
22  In Nevada, a discretionary act "is one which requires 'exercise of personal
23  deliberation, decision and judgment.'" *Ortega v. Reyna*, 953 P.2d 18, 23 (Nev. 1998). This Court
24  has applied § 41.032 immunity to state law claims against officers performing discretionary acts.
25  *Herrera v. Las Vegas Metro. Police Dep't*, 298 F. Supp. 2d 1043 (D. Nev. 2004). As in *Ortega*
26  and *Herrera*, the record shows in this case that Officer Arambula used his judgment and

AO 72
(Rev. 8/82)

performed discretionary acts in arresting and handcuffing the Plaintiff. The statute protects the discretionary decision "whether or not the discretion is abused." N.R.S. § 41.032(2).

Therefore, the Defendants' Motion will be granted as to the state law claims of assault and battery.

*Respondeat Superior: Joint and Several Liability*

Plaintiff admits that Defendant Clark County School District "cannot be liable for Arambula's constitutional violations under a theory of *respondeat superior*." (Opp'n 22) (citing *Monell v. Dep't of Social Svcs. of City of N.Y.*, 436 U.S. 658, 691 (1978)). Therefore the Court does not need to discuss it further and the Motion will be granted as to this claim.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that the Defendants' Motion for Summary Judgment (#17) is DENIED as to the claim for Excessive Force, False Arrest, and Qualified Immunity; the Motion is GRANTED as to all other claims.

Dated:   January 26, 2007.

_____
**ROGER L. HUNT**
**Chief United States District Judge**

9